IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| ANTUWANE TATE, WILLIAM D. WHITLEY, BRANDON McCOLLINS, and VALENTI ARMSTEAD, on behalf of themselves and all other similarly situated employees, | |
| Plaintiffs, | |
| v. | Case No. _____ |
| BIMBO BAKERIES USA, INC., and BIMBO FOODS BAKERIES DISTRIBUTION, LLC, | FLSA COLLECTIVE ACTION |
| Defendants. | JURY DEMANDED |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

Plaintiffs Antuwane Tate, William D. Whitley, Bandon McCollins and Valenti Armstead (herein "named Plaintiffs"), individually, collectively and on behalf of all other similarly situated persons, alleges the following against Defendants Bimbo Bakeries USA, Inc. and Bimbo Foods Bakeries Distribution, LLC formerly Bimbo Foods Bakeries Distribution, Inc. ("Bimbo"):

### NATURE OF ACTION

1. This is an action to recover wages and damages owed under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*

2. This action is brought as a collective action under the FLSA, 29 U.S.C. § 216(b) to recover

1

overtime wages, liquidated damages, attorneys' fees and other statutory penalties resulting from Bimbo's violations of the FLSA.

3. For at least three years prior to the filing of this action, Bimbo has knowingly misclassified the named Plaintiffs and others similarly situated as defined below (collectively referred to as "Distributors," and/or "Class Members"), as independent contractors, and failed to pay them statutorily required overtime wages.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter and the parties pursuant to 29 U.S.C. § 216(b), 28 U.S.C. § 1331.

6. This Court has personal jurisdiction over Bimbo because it regularly transacts business in, and has significant and continuous contacts with, Tennessee.

7. Venue is proper pursuant to 28 U.S.C. § 1391(b) (2) because events giving rise to this action occurred in Shelby County, Tennessee.

## PARTIES

8. Antuwane Tate is a resident of Shelby County, Tennessee. He currently works, and at all relevant times worked, for Bimbo as a Distributor and regularly works out of a depot located in Shelby County, Tennessee. Antuwane Tate is, and at all relevant times has been a non-exempt "employee" of Bimbo within the meaning of 29 USC 203(e)(1) and 29 USC 213(a)(1). Pursuant to 29 U.S.C. § 216(b), attached to and filed with this Complaint as *Exhibit A* is the Consent to Become a Party Plaintiff and opt-in to Lawsuit signed by Antuwane Tate.

9. William D. Whitley is a resident of Shelby County, Tennessee. He currently works, and at all relevant times worked, for Bimbo as a Distributor and regularly works out of a depot located

in Shelby County, Tennessee. William D. Whitley is, and at all relevant times has been a non-exempt "employee" of Bimbo within the meaning of 29 USC 203(e)(1) and 29 USC 213(a)(1). Pursuant to 29 U.S.C. § 216(b), attached to and filed with this Complaint as *Exhibit B* is the Consent to Become a Party Plaintiff and opt-in to Lawsuit signed by William D. Whitley.

10. Brandon McCollins is a resident of Shelby County, Tennessee. He currently works, and at all relevant times worked, for Bimbo as a Distributor and regularly works out of a depot located in Shelby County, Tennessee. Brandon McCollins is, and at all relevant times has been a non-exempt "employee" of Bimbo within the meaning of 29 USC 203(e)(1) and 29 USC 213(a)(1). Pursuant to 29 U.S.C. § 216(b), attached to and filed with this Complaint as *Exhibit C* is the Consent to Become a Party Plaintiff and opt-in to Lawsuit signed by Brandon McCollins.

11. Valenti Armstead is a resident of DeSoto County, Mississippi. He currently works, and at all relevant times worked, for Bimbo as a Distributor and regularly works out of a depot located in Shelby County, Tennessee. Valenti Armstead is, and at all relevant times has been a non-exempt "employee" of Bimbo within the meaning of 29 USC 203(e)(1) and 29 USC 213(a)(1). Pursuant to 29 U.S.C. § 216(b), attached to and filed with this Complaint as *Exhibit D* is the Consent to Become a Party Plaintiff and opt-in to Lawsuit signed by Valenti Armstead.

12. Bimbo Bakeries USA, Inc. is the American corporate arm of the Mexican multinational bakery product manufacturing company Grupo Bimbo, the largest producer of baked goods in the world, is a Delaware corporation headquartered in Horsham, Pennsylvania, and is authorized to and regularly conducts business in Tennessee, including in Shelby County.

Bimbo Bakeries USA, Inc. may be served with process through its registered agent: Capitol Corporate Services, Inc., Ste. B, 992 Davidson Dr., Nashville, Tennessee 37205-1051. At all relevant times, Bimbo has employed Distributors and has had operations, offices, and/or depots in Shelby County, Tennessee and throughout the United States.

13. Bimbo Foods Bakeries Distribution, LLC is a subsidiary of Bimbo Bakeries USA, Inc., is a Delaware limited liability company headquartered in Horsham, Pennsylvania, and is authorized to and regularly conducts business in Tennessee, including in Shelby County. Bimbo Foods Bakeries Distribution, LLC is the distribution arm of Grupo Bimbo and Bimbo Bakeries USA, Inc.'s United States operations and is the contracting entity in the Plaintiffs and Class Members' Distribution Agreements. Bimbo Foods Bakeries Distribution, LLC may be served with process through its registered agent: Capitol Corporate Services, Inc., Ste. B, 992 Davidson Dr., Nashville, Tennessee 37205-1051. At all relevant times, Bimbo has employed Distributors and has had operations, offices, and/or depots in Shelby County, Tennessee and throughout the United States.

14. The named Plaintiffs and the other Class Members are, or at relevant times were, non-exempt employees of Bimbo as defined by 29 USC (29 U.S.C. § 203(e)(1) and 29 U.S.C. § 213(a)(1).

15. Bimbo is an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d).

16. Bimbo is, and at all relevant times was, engaged in interstate commerce as defined by the FLSA, 29 U.S.C. § 203, with a gross annual volume of sales made or business done greater than $500,000.

**COLLECTIVE ACTION ALLEGATIONS**

17. Count One, asserted below, is properly maintainable as a collective action under 29

U.S.C. § 216(b).

18. The proposed class includes:

   All individuals who worked as Distributors for Bimbo pursuant to Distribution (or "Franchise") Agreements with either Bimbo or their predecessors in interest, throughout the United States classifying them as "independent contractors" and/or "independent operators" in the three years prior to filing this lawsuit (collectively referred to as "Distributors" and/or "Class Members").

19. At all relevant times, Bimbo's illegal overtime wage practices have been widespread with respect to the proposed class. Bimbo's failure to pay proper overtime has not been the result of random or isolated individual management decisions or practices.

20. Bimbo's overtime wage practices have been routine and consistent. Throughout the past three years, Distributors have regularly not been paid the proper overtime wages despite working in excess of forty (40) hours per week.

21. The named Plaintiffs and the other Class Members have performed the same or similar job duties. Moreover, like the named Plaintiffs, the other Class Members have regularly worked more than forty (40) hours in a workweek. Accordingly, the Distributors victimized by Bimbo's unlawful practices are similarly situated to the named Plaintiffs in terms of employment and pay provisions.

22. Bimbo's failure to pay overtime compensation at the rates required by the FLSA result from generally applicable policies or practices and do not depend on the personal circumstances of individual Class Members. Thus, the named Plaintiffs' experience is typical of the experience of other Class Members employed by Bimbo.

23. The specific job titles or precise job requirements of the various Class Members do not

prevent collective treatment. All Distributors, including the named Plaintiffs', regardless of their precise job requirements or rates of pay, are entitled to overtime compensation for hours worked in excess of forty (40). Although the issue of damages may be individual in character, there is no detraction from the common nucleus of facts pertaining to liability.

24. Bimbo has employed a large number of Distributors. The proposed Class Members are so numerous that joinder of all members is impracticable. Upon information and belief there are several thousand members of the proposed class. Class Members can readily be identified from business records maintained by Bimbo.

25. There are common questions of law and fact affecting the rights of all Class Members that predominate over any questions affecting only individual members, including but not limited to:

    e. Whether Bimbo is an "employer" within the meaning of the FLSA;
    f. Whether the Class Members are employees of Bimbo under the FLSA;
    g. Whether Bimbo is required to and failed to pay the Class Members overtime for all hours worked in excess of forty hours per week;
    h. Whether the Class Members are entitled to a declaratory judgment and other equitable and legal relief for Bimbo's failure to classify and treat the Class Members as employees and not as independent contractors;
    i. The nature and extent of class injury and the appropriate measure of damages for the class.

26. The claims of the named Plaintiffs are typical of the claims of the Class they seek to represent. The named Plaintiffs and the other Class Members work or have worked for Bimbo and have been subjected to common policies and practices of failing to pay all wages and overtime owed and making unlawful and excessive deductions from their wages.

27. Bimbo has acted or refused to act on grounds generally applicable to the Class Members as a whole by engaging in the same violations of law with respect to the Class, thereby making final injunctive relief and corresponding declaratory relief appropriate with respect to the

Class as a whole.

28. The named Plaintiffs have no interest antagonistic to those of other Class Members and have retained attorneys who are knowledgeable in wage and hour and class action litigation. The named Plaintiffs will fairly and adequately represent and protect the interests of the Class.

29. Class Members have been damaged and are entitled to recovery as a result of Bimbo's common and uniform policies, practices and procedures.

30. A class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of wage litigation like the present action, where individual Class Members lack the financial resources to vigorously prosecute a lawsuit in federal court against the largest bakery company in the United States and the world. In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Bimbo's practices.

## **FACTS GIVING RISE TO THE CAUSE OF ACTION**

31. Bimbo is in the business of producing and distributing baked goods, and is, on information and belief, the largest bakery company in the United States. Bimbo owns such recognizable brands as Sara Lee, Orowheat, Thomas, Entenmann's, and Boboli, among others.

32. The retail sales of Bimbo's baked goods to customers occur through third party retail outlets, such as supermarkets, food stores, warehouse stores and convenience stores.

33. Bimbo enters into agreements with the retail outlets, pursuant to which Bimbo commits to deliver, and the retail outlets agree to provide shelf space for, baked goods distributed by Bimbo.

34. To fulfill its contractual obligations with the retail outlets and distribute its baked goods, Bimbo employs Distributors, such as the named Plaintiffs, to pick up fresh baked goods from

Bimbo's depots located throughout the United States for delivery to established customers of Bimbo in the Distributors' defined geographic territories within the United States.

35. Distributors are an integral part of Bimbo's business of selling fresh baked goods, and the services Distributors perform – distributing Bimbo's baked goods to outlets throughout the United States – are essential to the conduct of that business.

36. In the requisite routine of their employment for Bimbo, Distributors go to one of Bimbo's depots each morning to pick up the fresh baked goods and deliver the fresh baked goods to Bimbo's customers.

37. The Distributors stock and arrange Bimbo's merchandise at the customers' outlets pursuant to a schematic mandated by Bimbo, remove damaged and "off code" goods, place Bimbo's advertising materials, and engage in other activities mandated by Bimbo.

38. The Distributors then go back to the depot or go home to input customer orders.

39. On certain days each week, when there are no fresh baked goods to be delivered, Distributors drive their personal vehicles (less than 10,000 lbs.) to do "pull ups" for the purpose of restocking and rotating stock according to colored tie and date.

40. As a condition of employment, the Distributors such as the named Plaintiffs have signed lengthy Distribution (or "Franchise") Agreements with either Bimbo or its predecessors in interest that incorrectly and falsely purport to classify the Distributors as "independent contractors" and/or "independent operators" rather than employees of Bimbo.

41. The Distribution Agreements are form contracts, the terms of which are identical or substantially similar for all Class Members.

42. The Distribution Agreements are adhesion contracts drafted exclusively by Bimbo or its predecessors in interest. Bimbo does not negotiate the material terms of the Distribution

Agreements with the Distributors, who are required to sign the agreements on a "take it or leave it" basis.

43. The Distribution Agreements purport to sell the "distribution rights" of defined sales areas for the delivery of fresh baked goods.

44. The Distribution Agreements contain various statements purporting to classify Class Members as "Distributors" and/or "independent contractors" and/or "independent operators" with "the right to operate the business using DISTRIBUTOR's own judgment and discretion."

45. At the same time, even pursuant to the Distribution Agreements, Bimbo monitors a Distributor's performance; alters the amount of product ordered by the Distributor; restricts the Distributor's participation in other business activity considered competitive with Bimbo's products; terminates the contract whenever Bimbo unilaterally determines a "breach" and/or a "chronic breach" of any of the contract provisions and/or damage to "its trademarks or commercial reputation" has occurred; retains all proceeds for services areas Bimbo deems abandoned by a Distributor; charges the Distributor a fee to services an area designated by Bimbo; retains a general security interest in the distribution rights; requires Distributors to obtain Bimbo's approval for subsequent buyers of the distribution rights; retains the right of first refusal upon sale of the distribution rights; retains the right to require a sale of the distribution rights upon death of the Distributor; retains the right to sell the distribution rights on behalf of the estate upon death of the Distributor if the estate does not sell within 90 days of the date Bimbo requires the sale; requires that all sales be processed through Bimbo at a cost of 2% of the sales price; and retains a limited power of attorney with "full and complete authority" to transfer the distribution rights or perform any of the Distributor's

obligations pursuant to the Distribution Agreement.

46. The Distribution Agreements have been designed by Bimbo or its predecessors in interest to circumvent the requirements of the FLSA by purporting to shift the burden of employment on to the Distributors themselves, when in fact Bimbo maintains extensive control over the Distributors who remain entirely dependent on Bimbo to obtain business and service the area designated by Bimbo.

47. Distributors do not exercise independent business judgment in connection with the services they perform for Bimbo.

48. Distributors do not sell products to Bimbo's customers, and Bimbo negotiates the pricing of the products delivered by Distributors to its customers.

49. For this purpose, Distributors utilize specific equipment required by Bimbo, such as a handheld computer device that enables Bimbo to account for its products and fix the prices of its products.

50. Distributors are not paid by Bimbo's customers. Instead, they are paid by Bimbo.

51. Bimbo prohibits Distributors from delivering fresh baked goods that are in direct competition with brands represented by Bimbo.

52. Bimbo also employs supervisors who work at the depots and who enforce strict rules and requirements on the named Plaintiffs and the other Distributors and have extensive supervisory and disciplinary control over the Distributors.

53. Bimbo's supervisors unilaterally increase or decrease orders placed by Distributors with or without prior notice to the Distributors.

54. Bimbo's bakeries also unilaterally determine which fresh baked goods are available for order and delivery by the Distributors.

55. Bimbo supervisors also determine named Plaintiffs' and the other Distributors' routes and frequency of delivery as well as times at which they may arrive at the depot and when they must leave the outlets.

56. Bimbo has created written policies and procedures outside of the Distribution

57. Agreements that Distributors are required to follow in their work. The written policies are drafted by management personnel and posted in the depots. These written rules typically relate to the return of products for credit and placing orders for product.

58. There are also unwritten policies that Distributors are expected to follow. These policies govern the ordering of product, frequency of deliveries and manner of store service. For example, Bimbo has an unwritten policy of refusing to accept "excessive" returned products.

59. Bimbo supervisors provide written warnings to named Plaintiffs and the other Distributors for failing to keep all products within code mandated by Bimbo and/or failing to comply with service and merchandising requests of an outlet within the geographic area serviced by the Distributors.

60. Bimbo retains the ability to terminate the named Plaintiffs and the other Distributors, for example, for distributing products Bimbo determines to be out of code.

61. Furthermore, the outlets with which Bimbo contracts and to which named Plaintiffs and the other Distributors deliver goods on behalf of Bimbo, contact Bimbo supervisors regarding complaints about the manner and means of named Plaintiffs' and the other Distributors' performance.

62. Bimbo supervisors, in turn, contact named Plaintiffs and the other Distributors to address any individual performance problems that are brought to Bimbo's attention by the outlets to which named Plaintiffs and the other Distributors deliver goods on behalf of Bimbo.

63. When Distributors perpetrate a so-called "breach" of a Distribution Agreement, whether disclosed or undisclosed, known or unknown, they are subject to discipline by Bimbo, up to and including termination.

64. Bimbo documents such so-called "breaches" with Notice of Breach of Distribution Agreement letters which are drafted by various members of Bimbo's management team and typically hand-delivered to Distributors and retained in the Distributors' files, along with a myriad of other documents which are concealed from the Distributors consistent with the maintenance of a personnel file.

65. After Distributors accrue an unknown number of "cure letters" Bimbo can unilaterally terminate a Distribution Agreement.

66. Each of the named Plaintiffs regularly work well in excess of forty hours per week for Bimbo and some have typically worked as many as eighty (80) hours per week for Bimbo.

67. The named Plaintiffs are aware of the other Distributor's work schedules, which are also over forty hours per week. They are aware of their working hours because they see the other Distributors at the depot in the morning and then again in the afternoon. Additionally, they communicate regularly during the day by phone and text with other distributors, who are working at the same time she is working.

68. Named Plaintiffs' duties and compensation are indicative of similarly situated Distributors.

69. Like named Plaintiffs, other Distributors are, and at relevant times have been, regularly required to work for Bimbo in excess of forty (40) hours per week without overtime compensation.

70. Bimbo's improper policies and compensation practices applied to named Plaintiffs and all similarly situated Distributes they purport to represent.

71. For example, Bimbo required all of its Distributors, including Plaintiffs, to execute Distribution Agreements and perform their duties pursuant to written Bimbo policies uniformly applicable to all Distributors governing their job duties and compensation practices applicable to them.

72. For example, the Distributors are provided a Bimbo manual that uniformly governs the performance of their duties for the company.

73. All the Distributors are uniformly subject to the same unlawful compensation practices that named Plaintiffs have been subject to during their tenure at Bimbo.

74. Bimbo employs individuals in the Nashville, Tennessee market that perform the same functions and duties as Plaintiffs do as independent contractor Distributors, however these individuals are classified as employees and are parties to a collective bargaining agreement.

## CAUSE OF ACTION
## VIOLATION OF THE FAIR LABOR STANDARDS ACT

75. The foregoing paragraphs are incorporated as if set forth in their entirety.

76. The Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* is a remedial statute designed to ensure that employees who are "suffered" or "permitted" to work for an employer are paid overtime wages for all hours worked in excess of 40 hours in individual work weeks.

77. There are no exemptions to the FLSA's overtime requirements applicable in this matter.

78. Named Plaintiffs are non-exempt employees entitled to the statutorily mandated overtime pay according to the FLSA.

79. Bimbo is an employer pursuant to 29 U.S.C. § 203(d).

80. At relevant times, the named Plaintiffs and the other Class Members regularly or from time to time worked more than forty (40) hours per week but did not receive overtime pay.

81. To avoid their obligations to pay overtime under the FLSA, Bimbo or its predecessors in interest promulgated a business model in which the Bimbo essentially sold jobs to employees through a fictional or nominal franchise/delivery agreement.

82. Bimbo or its predecessors in interest falsely designated the Putative Class Members as independent contractors and required them to incorporate, which was reasonably known and designed by Bimbo to be a sham for Bimbo's benefit.

83. Despite the facade of independence, the actual contract agreement and the actual working conditions of the Plaintiffs and Putative Class Members indicate that the Bimbo has the exclusive authority to control almost all aspects of the "franchised" delivery business, including customer relations, negotiations of customer contracts, assignment of work, manner in which work is to be performed, and materials and equipment to be used.

84. Bimbo has failed to comply with 29 U.S.C. § 207 because the named Plaintiffs and the other Putative Class Members work for Bimbo in excess of forty hours per week, but Bimbo has failed to pay them for those hours at the statutorily required rate of one and one-half times Plaintiff's regular rate of pay as required by the FLSA.

85. Bimbo knows, and at all relevant times knew, that the named Plaintiffs and the other Putative Class Members were working overtime but has failed to properly pay overtime wages and has no reason to believe its failure to pay overtime was in compliance with the FLSA. Bimbo's violations of the FLSA are, and at all relevant times were, intentional and willful, and accordingly, a three-year statute of limitation applies, pursuant to 29 U.S.C. § 255.

86. Each improperly paid Putative Class Member who has performed and or continues to perform services for Bimbo for any time during the three years preceding this lawsuit is entitled to notification of the pendency of this action and of his/her right to consent to

becoming a party to this action. Notice should be sent to all Class Members, as defined above, pursuant to 29 U.S.C. § 216(b).

87. As a result of Bimbo's failure to pay overtime wages, the named Plaintiffs and all other Putative Class Members have been damaged and are entitled to recovery of overtime wages, liquidated damages in an amount equal to the wages they are owed as unpaid overtime, prejudgment interest, attorneys' fees, costs and other compensation, declaratory and injunctive relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the Class Members, pray:

A. For the Court to order Bimbo to file with this Court and furnish to Plaintiffs' counsel a list of the names and address of all current and former Distributors for the past three years;

B. For the Court to authorize Plaintiffs' counsel to issue notice at the earliest possible time to all current and former Distributors for the past three years immediately preceding this action, informing them that this action has been filed and the nature of the action, and of their right to opt into this lawsuit if they worked hours in excess of forty (40) hours in a week for Bimbo during the past three years but were not paid overtime as required by the FLSA;

C. A declaration that Bimbo has willfully violated and is violating the FLSA;

D. Enjoining Bimbo from violating the FLSA;

E. Awarding named Plaintiffs and Class Members wages and overtime payments due to them for the hours worked by them by Bimbo without proper compensation, including liquidated damages pursuant to 29 U.S.C. § 216(b);

F. Awarding the named Plaintiffs and the other Class Members statutory, compensatory and punitive damages, liquidated damages, appropriate statutory penalties, and treble damages to be paid by Bimbo.

G. Awarding the named Plaintiffs and the other Class Members pre-judgment and post-judgment interest;

H. Awarding the named Plaintiffs and the other Class Members attorneys' fees and costs of suit; and

I. Awarding the named Plaintiffs and the other Class Members such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Respectfully Submitted,

*s/J. Russ Bryant*
Gordon E. Jackson (TN Bar No. 08323)
James L. Holt, Jr. (TN Bar No. 012123)
J. Russ Bryant (TN Bar No. 033830)
Paula R. Jackson (TN Bar No. 20149)
Robert E. Turner, IV (TN BPR #35364)
**JACKSON, SHIELDS, YEISER & HOLT**
262 German Oak Drive
Memphis, TN 38018
Telephone: (901) 754-8001
Facsimile: (901) 754-8524
*gjackson@jsyc.com*

*jholt@jsyc.com*
*rbryant@jsyc.com*
*pjackson@jsyc.com*
*rturner@jsyc.com*

&

Michael L. Weinman (TN BPR #015074)
**WEINMAN THOMAS LAW FIRM**
112 S. Liberty Street, Suite 321
P.O. Box 266
Jackson, TN 38302
(731) 423-5565
*mike@weinmanthomas.com*

*Attorneys for Plaintiffs and similarly situated current and former employees*

### CERTIFICATE OF SERVICE

This is the Original Collective Action Complaint. Service of this Collective Action Complaint will be made on Defendants with summonses to be issued by the clerk per the Federal Rules of Civil Procedure.

*/s/ J. Russ Bryant*
J. Russ Bryant